# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 10, 2013

## STATE OF TENNESSEE v. DARRELL JOHNSON

**Appeal from the Criminal Court for Shelby County**
No. 10-04679      W. Otis Higgs, Jr., Judge

No. W2012-01467-CCA-R3-CD  - Filed October 3, 2013

The defendant, Darrell Johnson, appeals his Shelby County Criminal Court jury convictions of facilitation of attempted aggravated robbery and facilitation of aggravated burglary, challenging the sufficiency of the convicting evidence and the length of his sentences. We affirm the convictions and sentences. On remand, however, we direct the trial court to correct the judgments to properly effectuate merger of the alternative counts of aggravated burglary.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Ted I. Jones, Memphis, Tennessee, for the appellant, Darrell Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Anita Spinetta and Charles Summers, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On July 27, 2010, the Shelby County grand jury charged the defendant and Jermane Greer with three counts of attempted aggravated robbery, two alternative counts of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony. The trial court conducted a jury trial in January 2012.

At trial, brothers Felimon Martinez and Jose Martinez, both of whom testified through an interpreter, offered substantially similar testimony about the events of December 2, 2009. On that date, the Martinez brothers were settling into their new home on Guernsey,

where they had moved the prior day, with their friend, Romero Herberto,[1] and a minor friend, K.O.[2] Felimon Martinez and K.O. were standing near the front window of the house arranging furniture when a black man knocked on the window. Felimon Martinez recognized the man, having seen him at the house next door. The man told Felimon Martinez to open the front door, and he complied. The black man, identified by the Martinez brothers at trial as the defendant, and another black man entered the house. The defendant asked Felimon Martinez how many people were in the house, explaining that he wanted to "chat" with them. K.O. went to Jose Martinez's bedroom, where he was watching television, and told him to come to the living room. Once everyone was in the living room, the defendant told them all to sit down. The defendant then asked how much they were paying in rent, as well as other questions which the Martinez brothers did not understand. At that point, K.O. informed the defendant and his accomplice that Messrs. Martinez and Mr. Herberto did not speak English. The defendant and his friend laughed and left the house. Both of the Martinez brothers confirmed that the defendant asked all of the questions.

Felimon Martinez closed the door, and two to three minutes later, someone knocked. When Felimon Martinez opened the door, the man who had previously accompanied the defendant, later identified as Jermane Greer, put a gun to Felimon Martinez's head and forced him inside toward a closed door off the hallway. Once they approached the door, Mr. Greer ran out of the house. Felimon Martinez testified that he thought Mr. Greer had seen the cellular telephone in Felimon Martinez's hand.

Jose Martinez testified that, while Mr. Greer was in their house, the defendant waited for Mr. Greer in front of the house next door. When Mr. Greer ran out of the Martinez's house, he stopped at the house next door and gave the handgun to the defendant. Jose Martinez identified Mr. Greer as the gunman at trial, referring to the same photographic lineup wherein he had previously identified Mr. Greer for police detectives.

On cross-examination, Felimon Martinez testified that the defendant did not hold him at gunpoint and that he had never seen the defendant with a gun. Felimon Martinez stated that the defendant only entered his house one time and that, on that one occasion, he did not invite the defendant into his home; rather, Mr. Martinez opened the door and the defendant stepped inside. Jose Martinez testified that the defendant never brought a gun to his house. Both Felimon and Jose Martinez admitted that the defendant had never threatened them.

---

[1] At trial, Felimon Martinez identifies his friend as Berto Romano. The indictment refers to Romero Herberto. As is the practice of this court, we will employ the spelling contained in the indictment.

[2] It is the policy of this court to refer to minors by their initials.

Jose Martinez estimated that his house was approximately 40 to 50 feet away from the defendant's house. When he saw Mr. Greer give the handgun to the defendant, he watched the defendant hide the handgun inside the back of his pants. The defendant and Mr. Greer returned to the house a third time and knocked on the door, but Mr. Martinez did not open the door.

K.O. testified that she was 11 years of age on December 2. She had just returned home from school when two men knocked on the front door. Felimon Martinez opened the door, and the two men stepped inside. K.O. thought the men seemed friendly. One of the men told her to gather everyone in the living room, and she complied. The same man asked how much they paid in rent and if they spoke English. When K.O. responded that the men in the house did not speak English, the two visitors laughed and left the house. Approximately one minute later, there was a knock at the door, and Felimon Martinez and Mr. Herberto instructed her to go to the other room. K.O. and Mr. Herberto went inside the other room, and K.O. locked the door. K.O. hid inside a closet, and Mr. Herberto hid underneath the bed. She testified that she could hear voices outside, although she could not discern exactly what was being said. She knew, however, that "it was like a threat – like 'If you don't open your door, I will shoot['] or something like that." After the intruder left, she called the police. K.O. testified that the two men returned to the house and knocked on the door, but the Martinez brothers refused to open it. K.O. was unable to identify either of the men who came to her house on December 2.

Officer Michael Branning of the Memphis Police Department ("MPD") testified that he was on patrol on December 2 when he received a call about a robbery at 3740 Guernsey. He arrived at the address within two minutes of the call and, upon speaking with the occupants of the house, immediately detected a language barrier. He called for a Spanish-speaking officer to assist him. While he and the occupants of the house were standing outside, one of the men pointed and exclaimed something to the effect of, "That's him." Officer Branning turned to see a man walking in their direction. Officer Branning and his partner approached the man, who told the officers that he lived in the house next door and that he had just returned home. Officer Branning explained that there had been an incident at 3740 Guernsey and that the man needed to wait in the police cruiser until they could ascertain what had transpired. At trial, Officer Branning identified the defendant as the man he had detained. Officer Branning testified that someone on the scene pointed to an object on the ground outside the Martinez's house, and Officer Branning saw a pistol magazine lying in the leaves.

MPD Officer Hope Smith testified that she was called to the crime scene to photograph the magazine. She admitted that no fingerprints were collected from the magazine, noting that, at the time it was collected, the magazine was wet because it had been

raining. She stated that the investigator would determine whether to process the magazine for fingerprints, and she did not recall who investigated this case.

Jermane Greer testified that he was, at the time of trial, incarcerated on charges of aggravated burglary and attempted aggravated robbery. He stated that he committed those crimes with the help of "Polo" and "Shawn." Mr. Greer identified the defendant as the man he knew as "Polo" and testified that he knew the defendant through "Shawn," although he did not know Shawn's real name. Mr. Greer testified that he was 18 years old in December 2009 and that he had received a "special ed diploma" from high school because he had been "in resource ever since [he] was little."

On December 2, Mr. Greer was at his residence when the defendant and Shawn picked him up. The three men went to the defendant's house on Guernsey. When they arrived at the house, the men drank beer together and "smoked like half a blunt together." During this time, the defendant and Shawn began discussing "the Mexican" who lived next door to the defendant and stated that they wanted to rob him. Mr. Greer did not recall whether it was the defendant or Shawn who presented the idea of the robbery. Mr. Greer agreed to assist them, and he accompanied the defendant to the Martinez residence. Shawn was stationed on the front porch of the defendant's house as their "lookout."

The defendant knocked on the door of the Martinez house and "the Mexican" invited them, in Spanish, to come inside. Once inside, the defendant began asking questions while Mr. Greer looked around the house to determine how many people were present. Something was said about yard work, at which point the defendant and Mr. Greer began to laugh and left the house. Mr. Greer and the defendant stood in the yard outside the Martinez's house, and a few minutes later, the defendant handed Mr. Greer a handgun, asking him if he was ready. Mr. Greer responded in the affirmative, and he returned to the front door of the Martinez house. Mr. Greer knocked on the door, believing that the defendant was going to accompany him inside the house. Felimon Martinez opened the door. Mr. Greer entered the house and pointed a gun at Felimon Martinez, demanding money. Mr. Greer testified that he did not realize he was committing the crime alone until he turned back to discover that the defendant was not behind him. Mr. Greer forced Felimon Martinez "to one of the rooms where the other Mexican had ran to," instructing Felimon Martinez to make his friend "come out and give me the money" or Mr. Greer would "blow his head off." Mr. Greer testified that, at that point, he heard "like a gun racket noise inside the room," prompting him to flee from the house. Mr. Greer claimed that he ran past the defendant's house, threw the handgun in the yard, and went home.

Mr. Greer stated that he attempted the robbery because he "was broke" and needed money to buy food. He testified that the plan was to split the money among the

defendant, Shawn, and himself, although he admitted that he received nothing from the attempted robbery. With respect to the handgun, Mr. Greer testified that he believed it belonged to the defendant because the defendant had given it to him. Mr. Greer stated that he did not have the handgun in his possession when he entered the Martinez's house the first time. He knew, however, that the defendant was in possession of the handgun during their initial visit to the house because the defendant had shown the gun to Mr. Greer when they "first got in the car" that day. Mr. Greer identified the defendant to MPD detectives, explaining that he had known the defendant previously because they "used to smoke and drink together."

On cross-examination, Mr. Greer admitted that, when he was first brought in for questioning, he lied to law enforcement officers about his involvement in the crimes, although he later told the truth. Mr. Greer acknowledged that the defendant "didn't pull a gun on anybody," nor did the defendant steal any property or threaten to kill anyone. Mr. Greer described the handgun as "all black" and stated that he thought it "was a nine." He testified that he threw "the whole gun" into the defendant's yard, and he denied that he gave the handgun to the defendant.

Mr. Greer denied that he had been promised any leniency in exchange for his testimony. He expressed remorse for his actions and denied that he had ever committed similar crimes. When asked how the defendant and Shawn were able to convince him to commit these crimes, Mr. Greer responded that "when you kick it with somebody," which he defined as drinking and "smoking weed," and "they want you to do something," then "you just go do it."

On redirect examination, Mr. Greer confirmed that the account of the crimes that he gave to police when he confessed was the same account he had relayed in his trial testimony. He also testified that the initial plan was to commit the robbery during the first visit to the Martinez's home but that, once they realized the language barrier hindered their plans, they left the house to regroup. While Mr. Greer and the defendant stood in the front yard, they developed a new plan, which included the defendant's accompanying Mr. Greer into the house, and the defendant handed the gun to Mr. Greer.

With this evidence, the State rested its case. Following the trial court's denial of the defendant's motion for judgment of acquittal and a *Momon* colloquy, *see Momon v. State*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose not to present any proof.

Based on this evidence, the jury convicted the defendant of the lesser offenses of facilitation of attempted aggravated robbery and facilitation of aggravated burglary. The

jury acquitted the defendant of the charge of employing a firearm during the commission of a dangerous felony. Following a sentencing hearing, the trial court found the defendant to be a career criminal and imposed mandatory sentences of 12 years for each of the five Class D felony convictions. The trial court ordered two of the facilitation of attempted aggravated robbery convictions to be served consecutively, with the other three convictions to be served concurrently. As such, the trial court ordered an effective sentence of 24 years' incarceration.

Following the denial of his timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant argues that the evidence adduced at trial was insufficient to support his convictions and that the sentence imposed was excessive. We consider each claim in turn.

*I. Sufficiency*

The defendant first contends that the evidence was insufficient to support his convictions of facilitation of attempted aggravated robbery and facilitation of aggravated burglary. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[a]ggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(2). "Robbery is the intentional or knowing theft of property from the person of another by

-6-

violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" *Id.* § 39-12-101(a)(2).

Aggravated burglary is "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." T.C.A. § 39-14-403(a). "A person commits burglary who, without the effective consent of the property owner [e]nters a building and commits or attempts to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(3).

Moreover, "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a).

Here, the proof adduced at trial established that the defendant and his accomplice, Shawn, picked up Mr. Greer and drove him to the defendant's house, where the defendant and Shawn proceeded to present a plan to rob the defendant's next-door neighbors. The defendant and Mr. Greer called on the Martinez brothers, feigning a friendly visit, to determine how many people were present in the house. The defendant asked all of the questions. Mr. Greer returned to the Martinez's house with a gun provided to him by the defendant. Felimon Martinez testified that "the moment I opened the door, [Mr. Greer] had the gun like this, and he put it here at my head." Jose Martinez testified similarly that "the moment [Felimon] opened the door, [Mr. Greer] pointed the gun at his head." From this testimony, it is clear that Felimon Martinez did not give "effective consent" for Mr. Greer to enter his home. *See State v. Holland*, 860 S.W.2d 53, 58 (Tenn. Crim. App. 1993) (holding that, where victim allowed defendant into her home under false pretenses, this entry did not constitute "effective consent," as contemplated by Tennessee Code Annotated section 39-14-402). Mr. Greer then demanded money from the occupants of the house, threatening to "blow [Felimon Martinez's] head off" if they did not comply. Jose Martinez testified that he watched Mr. Greer give the handgun to the defendant after fleeing from his house. Both Felimon and Jose Martinez positively identified the defendant as the man who initially visited their house on December 2.

Viewing this evidence in the light most favorable to the State, we find the evidence adduced at trial sufficiently established that the defendant is guilty of facilitation of attempted aggravated robbery and facilitation of aggravated burglary.

*II. Sentencing*

Although the defendant concedes that he had the requisite number of prior felony convictions to qualify as a career offender, it appears that he nevertheless is challenging the length of his sentence, as opposed to simply challenging the trial court's imposition of partially consecutive sentences.

"[A]lthough the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.*

Despite the new standard of review, trial courts must still consider the principles of sentencing enumerated in Code section 40-35-210(b), *see Bise*, 380 S.W.3d at 698 n.33 (citing T.C.A. § 40-35-210(b)), 706 n.41, and must, as required by statute, consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)).

In the instant case, the defendant's three prior Class C felony convictions, two prior Class D felony convictions, and two prior Class E felony convictions qualified him as a career offender. *See* T.C.A. § 40-35-108(a)(3) ("A 'career offender' is a defendant who has received . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony."). As previously noted, the defendant does not challenge his status as a career offender. Because the defendant qualified as a career offender, the only sentence the trial court could have imposed was 12 years. *See id.* §§ 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); 40-35-112(c)(4) ("A Range III sentence is . . . [f]or a Class D felony, not less than eight (8) nor more than twelve (12) years.").

With respect to the trial court's decision to impose partially consecutive

sentencing, we observe that the record on appeal appears to be incomplete. In the sparse, four-page sentencing hearing transcript, dated May 15, 2012, the prosecutor stated that he understood that "the Court is trying to consider consecutive as compared to concurrent time." The trial court responded that it had "given this case a lot of consideration and while I don't agree with the State['s] position that the defendant should get thirty-six years, I'm going to give him two twelve year sentences consecutive to both . . . and concurrent with all the other sentences." The trial court also stated that the defendant's "brother did an excellent job in testifying in this case." Because the defendant's brother did not testify at trial, it would appear that he testified at a prior sentencing hearing, at which the State advocated for a 36-year sentence. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). In the absence of the prior sentencing hearing transcript, we are without the facts upon which the trial court relied to make its sentencing alignment determination. Given this deficiency in the record, review of the trial court's sentencing decision is impossible, and we must presume the trial court's ruling was correct.

The defendant also challenges the trial court's failure to impose a sentence "on the judgment form for the Employment of a Firearm conviction." Given that the defendant was acquitted of this crime, it is patently obvious that no sentence was required.

### III. Merger of Offenses

Although this issue was not raised by the defendant, we must address the trial court's failure to merge the defendant's burglary offenses into a single judgment of conviction. The defendant was charged with two alternative counts of aggravated burglary, count four alleging burglary via an intent to commit theft and count five alleging burglary via an intent to commit assault. The jury convicted the defendant of two counts of facilitation of aggravated burglary, and the judgments reflect an imposition of a sentence for both convictions to be served concurrently with the facilitation of attempted aggravated robbery convictions. The imposition of concurrent sentences on the facilitation of aggravated burglary convictions does not effectuate merger. Accordingly, on remand, the trial court shall enter amended judgments in counts one, two, three, and four to remove the references to concurrent sentencing with count five and to reflect the merger of count five with count four, and the trial court shall vacate the judgment in count five to properly effectuate merger of the convictions.

*IV. Conclusion*

This case is remanded for the trial court to enter judgments correctly effectuating merger of the offenses as outlined in this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE